UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSE BALVERDE, individually and on behalf of all
others similarly situated,

                         Plaintiffs,

                – against –

LUNELLA RISTORANTE, INC. d/b/a LUNELLA
RISTORANTE, and GAETANA RUSSO, jointly and
severally,

                      Defendants.

**AMENDED OPINION
AND ORDER**

15 Civ. 5518 (ER)

---

Ramos, D.J.:

      Named Plaintiff Jose Balverde ("Balverde") and the opt-in Plaintiffs (collectively, with

the putative class members, the "Plaintiffs") bring this action under the Fair Labor Standards Act

("FLSA") and New York Labor Law ("NYLL"). Complaint ("Compl.") (Doc. 1). Plaintiffs

allege that they and all other similarly situated employees are entitled to wrongly withheld

gratuities, as well as minimum wage, overtime, and spread-of-hours pay from a Manhattan

restaurant operating under the name Lunella Ristorante. *Id.* Before the Court are two motions:

(1) Plaintiffs' Motion to Amend/Correct the Complaint, Doc. 57; and (2) Plaintiffs' Motion for

Class Certification, Doc. 60. For the reasons stated below, the motion to amend or correct the

complaint is GRANTED, and the motion to certify the class is GRANTED in part and DENIED

in part.

## I.    FACTUAL BACKGROUND[1]

Plaintiffs bring this suit against corporate Defendant Lunella Ristorante, Inc. d/b/a Lunella Ristorante ("Lunella"), and individual Defendant Gaetana Russo ("G. Russo," and together with Lunella, "Defendants"). Lunella is a restaurant located on Mulberry Street in Little Italy, New York City. Defendant G. Russo and her daughter, Rossana Russo, ("R. Russo") jointly own Lunella. Deposition of Gaetana Russo ("G. Russo Dep.") (Doc. 62-9) at 9:12–9:14. Goran Segota has been the manager of Lunella since 2006, where he supervises employees, records the hours worked by hourly employees, and sends the hours worked to Defendants' accountant to process payroll. Deposition of Goran Segota ("Segota Dep.") (Doc. 62-8) at 8:6–8:9; 11:2–11:5, 15:11–15:22.

From July 15, 2009 until 2015, Defendants employed at least forty-nine hourly employees as waiters, bussers, runners, bartenders, kitchen employees, and dishwashers. Declaration of Brent E. Pelton ("Pelton Declr.") (Doc. 62-6) (List of Employees).[2] Defendants have not provided any records showing employees who worked for Defendants in 2016 and 2017. *See* Pelton Decl. ¶ 15. Additionally, Plaintiffs aver that "[i]t is likely that additional employees, not included on Defendants' lists, worked at Lunella" because Segota mentioned two employees who did not have tax ID numbers and confirmed that one of them was not paid on the books. *See* Segota Dep. at 105:4-105:21, 147:9-147:20.

Balverde worked for Defendants as a waiter and bartender from approximately December 2013 through May 2015. Deposition of Jose Balverde ("Balverde Dep.") (Doc. 62-1) at 15:25–

---

[1] Except where noted, the following facts are undisputed.

[2] Of these employees, one is the named Plaintiff and four have opted-in to this case. *See* Docs. 19, 40, 45, 46. Defendants provided to Plaintiffs a list of thirty-eight employees who worked for Defendants as servers, runners, bussers and bartenders from 2009 through 2015. In reviewing this list and other lists and records produced by Defendants, Plaintiffs have compiled the list attached as Exhibit 6 to the Pelton Decl. *See* Pelton Decl. ¶ 15.

16:4, 17:7–17:9.  Opt-in plaintiff Carlos Garcia ("Garcia") worked for Defendants as a waiter from approximately February 2013 until around the end of summer 2014.  Deposition of Carlos Garcia ("Garcia Dep.") (Doc. 62-2) at 15:17–15:22, 39:21–39:23.  Opt-in Plaintiff Jorge Molina ("Molina") worked for Defendants as a waiter from approximately 2012 through October 2012, and again from approximately February 2014 through November 2014.  Deposition of Jorge Molina ("Molina Dep.") (Doc. 62-4) at 18:4–18:6; 19:8–19:11; 21:21–21:24.  Opt-in Plaintiff Angel Sevilla ("Sevilla") worked for Defendants as a runner from approximately December 2013 through March 2014.  Deposition of Angel Sevilla ("Sevilla Dep.") (Doc. 62-3) at 12:23–13:2; 27:15–27:18).  Opt-in Plaintiff Sadik Djecbitric ("Djecbitric") worked for Defendants as a waiter for a couple of weeks in June 2015.  Deposition of Sadik Djecbitric ("Djecbitric Dep.") (Doc. 62-5) at 14:4–14:9.

## II. PROCEDURAL BACKGROUND

Plaintiff commenced the instant action on July 15, 2015.  Compl.  Defendants Lunella and G. Russo filed an Answer on August 10, 2015.  Docs. 12, 13.[3]

In the Complaint, Balverde alleges seven (7) causes of action.  Counts I and II allege a FLSA collective action claim for unpaid minimum wage and unpaid overtime, respectively, on behalf of all hourly employees.  Compl. ¶¶ 3, 17, 55–62.  Four NYLL claims (Counts III-VI) are also brought on behalf of all hourly employees, and allege:

Count III:  Failure to pay minimum wage for all hours worked in violation of §§ 650, *et seq.*;[4]

---

[3] Plaintiffs seek to amend the Complaint to add as a Defendant R. Russo.  As such, the Class Notice does not include R. Russo as a Defendant.  Plaintiffs state that they are prepared to submit an amended Notice should the Court grant their motion.  Pls.' Mem. L. at 2 n.2.

[4] This claim is identical to the FLSA minimum wage violations asserted in Count I.

Count IV:   Failure to pay overtime for hours worked in excess of forty per week, in violation of §§ 650, *et seq.*;[5]

Count V:    Failure to pay "spread of hours" premiums for days in which the hourly employees' work day lasted ten or more hours, in violation of N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012); and

Count VI:   Failure to provide wage notices on the date of hire or by February 1 of each year in violation of NYLL, Article 6, § 191.

*Id.* ¶¶ 63–74. These four NYLL claims on behalf of the Unpaid Wage Class are referred to herein as the "Unpaid Wage Claims."

The seventh NYLL claim is brought on behalf of an "Unpaid Tips Subclass" consisting of all tip-eligible employees (wait staff, bussers, runners and bartenders). This claim alleges that Defendants unlawfully withheld gratuities from their tip-eligible employees, in violation of § 196-d (the "Unpaid Tips Claim"). *Id.* ¶¶ 75–77.

On November 19, 2015, Plaintiffs filed a motion to conditionally certify a FLSA collective action. Pursuant to Plaintiffs' motion, the Court conditionally certified the FLSA minimum wage and overtime claims as a collective action and authorized notice to be issued to all current and former servers, bartenders, and runners who worked at Lunella at any time from July 15, 2012 through May 11, 2016. Doc. 37 at 10.[6] Four individuals have exercised their rights to join the action by filing consent to become a party plaintiff forms with the Court. *See* Docs. 19 (Garcia), 40 (Molina), 45 (Sevilla), 46 (Djecbitric).

The parties have now exchanged discovery. *See* Memorandum of Law in Support of Plaintiffs Motion for Class Certificaton ("Pls.' Mem. L.") (Doc. 61) at 4. Defendants have

---

[5] This claim is identical to the FLSA overtime violations asserted in Count II.

[6] Plaintiffs' motion for FLSA collective action certification was denied as to kitchen employees. *Id.* at 9–10. In the same order, the Court also denied Defendants' motion to dismiss, motion for judgment on the pleadings, or motion for summary judgment seeking dismissal of Opt-in Plaintiff Garcia. *Id.* at 10.

deposed all Plaintiffs and Plaintiffs have deposed Defendant G. Russo, Lunella's manager—

Segota, R. Russo, and accountant Stuart Kosoff ("Kosoff"). *Id.*

## III.    CLASS CERTIFICATION

With respect to their class certification motion, Plaintiffs seek an order:

1) certifying Plaintiffs' New York Labor Law ("NYLL") claims for unpaid minimum wages, overtime wages, unpaid spread-of-hours and failure to provide wage notice, (Counts III, IV, V, VI) as a Rule 23(b)(3) class action on behalf of a class defined as: "all hourly employees who worked for Lunella Ristorante, Inc. at any time from July 15, 2009 through the present" (the "Unpaid Wage Class");

(2) certifying Plaintiffs' NYLL claims for unlawfully withheld gratuities (Count VII) as a Rule 23(b)(3) class action on behalf of a tipped subclass defined as: "all waiters, bussers, runners and bartenders who worked for Lunella Ristorante, Inc. at any time from July 15, 2009 through the present" (the "Unpaid Tips Subclass");

(3) appointing Named Plaintiff Jose Balverde as class representative and counsel for Plaintiffs as class counsel;

(4) approving the class notice attached to the declaration of Brent E. Pelton, Pelton Decl. at Ex. 11; and

(5) directing Defendants to furnish in electronically readable form the names and last known addresses of all members of the Class so that Plaintiffs can issue class notice.

Pls.' Mem. L. at 1–2.

### A.  Legal Standard

One or more members of a class are permitted to sue on behalf of the class if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "Rule 23(a) ensures that the named plaintiffs are appropriate

representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*,

564 U.S. 338, 349 (2011). The four requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Id.* (internal quotation marks omitted). "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

The putative class must also satisfy at least one of the three requirements listed in Rule 23(b). Here, Plaintiffs seek class certification under Rule 23(b)(3), *see* Pls.' Mem. L. at 10, which requires them to demonstrate, in addition to the prerequisites of Rule 23(a), that "the questions of law or fact common to class members predominate over any questions affecting only individual members," and that a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

A party seeking class certification must affirmatively demonstrate his compliance with Rule 23. *Wal-Mart*, 564 U.S. at 350. In order words, the Rule "does not set forth a mere pleading standard." *Id.* A district court must undertake a "rigorous analysis" in order to determine whether the requirements have been met. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). In making such determinations, the court "should not assess any aspect of the merits unrelated to a Rule 23 requirement." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251 (2d Cir. 2011) (quoting *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006)). However, the court's analysis will inevitably "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351. On a Rule 23 motion, "the ultimate question is not whether the plaintiffs . . . will prevail on the merits but rather whether they have met the requirements of Rule 23." *Gortat v. Capala Bros.*, 257 F.R.D. 353, 362 (E.D.N.Y. 2009). Although the Court must resolve factual disputes relevant to satisfying each

Rule 23 requirement, "any factual determinations made at the certification stage are not binding on a subsequent fact-finder, even the certifying court." *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012) (citing *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d at 41). When considering a motion for class certification, the court must accept the allegations in the complaint as true. *Meyer v. United States Tennis Ass'n*, 297 F.R.D. 75, 82 (S.D.N.Y. 2013).

Plaintiffs seek to certify their Unpaid Wage Class on behalf of all hourly employees of Defendants who are or were employed at any time during the six year NYLL statutory period. This includes both front of house employees (such as bussers and servers) and back of house employees (such as kitchen staff). Plaintiffs further seek to certify their Unpaid Tips Class on behalf of all tip-eligible employees of Defendants who are or were employed at any time during the six year statutory period. Defendants argue that Plaintiffs have failed to adequately allege: (1) numerosity, Defs.' Mem. L at 21–22; (2) commonality, *id.* at 7–20; (3) typicality, *id.*; and (4) adequacy of representation, *id.* at 2–6. Defendants also argue that the class should not be certified with respect to back of the house kitchen employees. *Id.* at 23.

### B. Analysis

#### 1. Kitchen Employees

As a threshold matter, the Court considers whether the Unpaid Wage Class should be certified with respect to back of the house kitchen employees. Plaintiffs previously made an application for conditional class certification pursuant to the FLSA. Doc. 23. In that application they sought—as they do again in the instant motion—to certify a class involving both front of the house (servers, runners, bussers, and bartenders) and back of the house employees. Doc. 24 at 11–12. The Court held:

> [T]he Court finds that Plaintiffs have failed to muster a showing of a common policy or practice that applied to back of the house

employees. The only allegations suggesting that Defendants' failure to pay overtime premiums extended to back of the house employees are Plaintiffs' statements that this was "a corporate policy that applied to all non-management employees," and that they "overheard conversations" amongst kitchen workers and dishwashers. These unsupported assertions and conclusory allegations are insufficient to conditionally certify a class . . . Ultimately, Plaintiffs' complaint and affidavits do not contain factual allegations specific to other types of employees besides servers, bartenders, and runners, such as "the specific hours worked by, or the amounts paid to, other employees. Therefore, Plaintiffs' motion for conditional certification is granted, but given the information presently before the Court, the class shall only include servers, bartenders, and runners.

Doc. 37 at 8. Defendants contend that Plaintiffs have submitted no additional substantive information that should alter the Court's determination with regards to back of the house employees for purposes of the instant motion. Defs.' Mem. L at 22. Plaintiffs argue that the pay policies are consistent as to *all* hourly employees—including both tipped and kitchen employees. Specifically, Plaintiffs aver that the deposition testimony of the Plaintiffs, the payroll records of Defendants, and Defendants' testimony confirm Defendants' corporate policy of paying all hourly employees (including tipped and kitchen employees) for eight hour shifts, up to forty hours in a week. Pls.' Mem. L. at 13–14.

Plaintiffs cite the following testimony as evidence for their position:

Q. Did you schedule the kitchen employees?

A. Yes.

Q. And the kitchen employees were paid for eight hours per shift?

A. Yes.

. . .

Q. Are there any records that show the wages paid to the line cooks?

A. Yes.

Q. What types of records?

A. The check stubs.

Q. Even though they get paid with cash they still get check stubs?

A. Yes, they do. The restaurant is paying taxes for them and issuing W2 forms.

. . .

Q. What time do the dishwashers come in? What's their schedule?

A. Well, it's pretty much the same like waitstaff. Actually, the ones that come in the afternoon comes one hour later because they usually clean after the waiters leave, so. But it's all confined within eight hours.

Segota Dep. at 63:16–63:21; 140:20–140:24; 142:17–142:24.[7]

While it is true that this testimony confirms that kitchen employees and dishwashers were paid based on an eight hour shift, Plaintiffs have not provided any additional testimony or evidence to suggest that the kitchen staff actually worked more than forty hours a week or that Defendants' failed to pay them overtime premiums.

As a result, the Court declines to certify the Unpaid Wage Class (Counts III, IV, V, VI) to include *all* hourly employees, as Plaintiffs have not sufficiently shown that kitchen or back of house employees meet the requirements of Rule 23(b).

### 2. Numerosity

Defendants argue that that Plaintiffs are unable to satisfy the numerosity requirement if the Court does not include back of the house kitchen employees. The numerosity requirement is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R.

---

[7] Plaintiffs also cite the following as support for their position: "Q. And you put in the minimum wage, an appropriate tip minimum wage amount? A. Right. Q. For the tipped workers? A. Right." Deposition of Stuary Kosoff ("Kosoff Dep.") (Doc. 62-10) at 27:15-27:20.

Civ. P. 23(a)(1). Although "numerosity is presumed at a level of 40 members," *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995), "[d]etermination of practicability depends on all the circumstances surrounding a case, not on mere numbers." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993); *see also Trinidad v. Breakaway Courier Sys., Inc.,* No. 05 Civ. 4116 (RWS), 2007 WL 103073, at *4 (S.D.N.Y. Jan. 12, 2007) ("While there are no rigid numerical guidelines for determining impracticability of joinder, courts have observed that generally less than 21 is inadequate; more than 40 is adequate; and numbers in between 21 and 40 are given varying treatment."). "[D]etermination of practicability depends on all the circumstances surrounding a case, not on mere numbers. *See In Re Beacon Assocs. Litig.*, 282 F.R.D. 315, 326 (S.D.N.Y. 2012) (quoting *Robidoux*, 987 F.2d at 936). Relevant considerations include "judicial economy arising from the avoidance of a multiplicity of actions, . . . financial resources of class members, [and] the ability of claimants to institute individual suits." *Robidoux*, 987 F.2d at 936.

Defendants have provided records that they employed thirty-eight or thirty-nine front of house employees from July 15, 2009 through 2015. *See* Doc. 62-6. Additionally, Plaintiffs state that "[i]t is likely that additional employees, not included on Defendants' lists, worked at Lunella" because Segota mentioned two employees who did not have tax ID numbers and confirmed that one of them was not paid on the books." *See* Segota Dep. at 105:4–105:21, 147:9–147:20.

Defendants assert that because there are thirty-eight tipped workers[8] that appear in their records, Plaintiffs cannot satisfy numerosity. Defs.' Mem. L at 22. However, the time period of

---

[8] Defendants maintain that it is only thirty eight—as opposed to thirty nine—employees. The lists of employees provided by each party contain some differences. For example, Defendants' list does not reference employees named Miguel Valerio or Tzvia Lorusso, both of whom appear on Plaintiffs' list. *Compare* Doc. 62-6 *with* Doc. 64-13.

these records is only through the end of 2015.  Plaintiffs seek to certify the Class for the period from July 15, 2009 *through the present*.  *See* Pls.' Mem. L. at 1–2.  In fact, it is not uncommon for Courts to certify classes where the relevant class period extends "to the present."  *See, e.g.*, *Hnot v. Willis Grp. Holdings Ltd.*, No. 01 Civ. 6558 (GEL), 2006 WL 2381869, at *2, n.4 (S.D.N.Y. Aug. 17, 2006) ("Contrary to what plaintiffs seem to assume, a statement referring to 'the present' generally does not refer to any moment in time beyond when the statement was made.  Thus, for example, a June 14, 2004, motion to certify a class of employees employed 'through the present' should be interpreted to refer to employees employed through June 14, 2004.").  Defendants' thus "base their [numerosity] estimate on a period . . . which does not encompass the entire putative class period."  *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237 (WHP), 2007 WL 2872455, at *6 (S.D.N.Y. Sept. 28, 2007).

Defendants do not dispute that they have not provided any records for 2016 or 2017.  Even without the records from 2016 and 2017, if there are thirty-eight employees, as Defendants allege, the Court still finds numerosity is satisfied.  *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (citing cases certifying classes composed of 14–25 members).  The Court finds that the more efficient use of judicial resources counsels in favor of class certification in this matter.

### 3.  Commonality

Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury."  *Wal-Mart*, 564 U.S. at 339 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58 (1982)).  However, "[t]his does not mean merely that they have all suffered a violation of the same provision of law."  *Id.* at 350.  Their claims must instead "depend on a common contention" that is "of such a nature that it is capable of classwide resolution," meaning

that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*; *see also Garcia v. Pancho Villa's of Huntington Village, Inc.*, 281 F.R.D. 100, 105 (E.D.N.Y. 2011) ("Commonality does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrant[s] class treatment.") (quoting *Damassia*, 250 F.R.D. at 156).

As a threshold issue, Defendants dispute class certification on the basis that the pleadings and deposition testimony to suggest that Plaintiffs are entitled to little overtime or other damages. Such arguments are premature and inappropriate at the class certification stage. *Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323 (ALC) (AJP), 2013 WL 1040052, at *14 (S.D.N.Y. Mar. 15, 2013), *report and recommendation adopted*, No. 12 Civ. 6323 (ALC) (AJP), 2013 WL 2473039 (S.D.N.Y. June 7, 2013) ("the merits . . . [are] immaterial to the class certification determination"); *see also Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07 Civ. 2579 (HB), 2008 WL 3399067, at *6 (S.D.N.Y. Aug. 12, 2008) ("Defendants' attack on the merits of Plaintiffs' claims is misplaced at this stage because these are unrelated to the Rule 23 requirements."). "The question of whether class members were properly paid can be addressed by class-wide proof regarding the accuracy of defendants' payroll records, defendants' financial records, and testimony." *Rivera v. Harvest Bakery, Inc.*, 312 F.R.D. 254, 276 (E.D.N.Y. 2016).

Where the question of law involves "standardized conduct of the defendant . . . a common nucleus of operative fact is typically presented and the commonality requirement . . . is usually met." *Lewis v. Alert Ambulette Serv. Corp.,* No. 11 Civ. 442 (JBW), 2012 WL 170049, at *10 (E.D.N.Y. Jan. 19, 2012). For this reason, commonality is usually satisfied in wage cases where the plaintiffs allege that defendants had a common policy or practice of unlawful labor

practices. *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 208 (E.D.N.Y. 2015); *see also*

*Vivaldo v. United Talmudical Acad. of Kiryas Joel, Inc.*, No. 14 Civ. 2636 (LAK) (FM), 2015

WL 4922961, at *3 (S.D.N.Y. June 18, 2015), *report and recommendation adopted*, No. 14 Civ.

2636 (LAK), 2015 WL 10793126 (S.D.N.Y. Sept. 17, 2015).

Questions such as "whether Defendants paid the Plaintiffs and members of the class the

rate of overtime pay required by federal and New York Labor Law" and "whether Defendants

complied with New York Labor Law pertaining to minimum wages for every hour worked and

overtime compensation" that are common to all Plaintiffs and class members are sufficient to

satisfy commonality even where plaintiffs "worked different tasks at different rates." *Poplawski*

*v. Metroplex on the Atl., LLC*, No. 11 Civ. 3765 (JBW), 2012 WL 1107711, at *7 (E.D.N.Y. Apr.

2, 2012); *see also Moreira v. Sherwood Landscaping Inc.*, No. Civ. 13-2640 (AKT), 2015 WL

1527731, at *12 (E.D.N.Y. Mar. 31, 2015) ("Factual variations" such as "different rates of pay

. . . different job functions . . . different departments [and] different managers" are insufficient to

defeat class certification where Plaintiffs have alleged common questions of law and fact

including a "practice of failing to pay overtime at the statutory rate [,] . . . failure to pay time and

a half for all hours worked over forty [,] . . . [and] violations of the NYLL."). These questions

are common as to all Plaintiffs and class members, regardless of their pay rate, job duties, or

precise number of hours worked, as "the Court may certify a class based on a theory of common

policy of unlawful practice even if there is evidence that some of the putative class members

were either not affected or were affected to a lesser degree." *Pichardo v. Carmine's Broadway*

*Feast Inc*, No. 15 Civ. 03312 (RA) (SN), 2016 WL 4379421, at *6 (S.D.N.Y. June 13, 2016),

*report and recommendation adopted sub nom. Pichardo v. Carmine's Broadway Feast Inc.*, No.

15-CV-3312 (RA), 2016 WL 5338551 (S.D.N.Y. Sept. 23, 2016); *Ansoumana v. Gristede's*

*Operating Corp*., 201 F.R.D. 81, 86 (S.D.N.Y. 2001) (differences such as "the number of hours worked, the precise work [employees] did, and the amount of pay they received concern the amount of damages," and such "individual questions with respect to damages will not defeat class certification") (internal quotation marks and citation omitted).

Here, because all of Plaintiffs' claims derive from the same wage and hour policies, the Court easily finds a number of questions common to the Class, including:

- whether Defendants had a policy of paying their employees less than minimum wage;

- whether Defendants had a policy of paying their employees regular hourly rates, rather than overtime rates, for any overtime hours worked;

- whether Defendants had a policy of not paying spread-of-hours pay for each day's labor with a spread of hours greater than ten;

- whether Defendants failed to provide employees with proper wage notices and statements; and

- whether Defendants withheld and retained gratuities from tip-eligible employees.

Because the answers to these questions will drive the resolution of the litigation, the Court finds the commonality requirement is satisfied. *See, e.g.*, *Shahriar*, 659 F.3d at 252 (affirming grant of class certification where the plaintiffs' NYLL claims "all derive[d] from the same compensation policies and tipping practices"); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615 (S.D.N.Y. 2012) (commonality satisfied where "[a]ll Class Members raise common issues: (1) whether Defendant had a policy of not paying Marketing Representatives and Specialists overtime premium pay for hours worked over 40 in a workweek; (2) whether Defendant failed to pay Class Members premium overtime wages; and (3) whether Defendant knew or should have known that Class Members were working 'off-the-clock'") (citing cases).

## 4. Typicality

Typicality requires that the claims of the representative party be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). The requirement is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936–37.

In *Shahriar*, the Second Circuit found that class certification was appropriate where defendant did not deny that all servers were subject to its uniform tip practices. *Shahriar*, 659 F.3d at 253; *see also Reyes v. City of Rye*, No. 13 Civ. 9051 (NSR), 2016 WL 4064042, at *5 (S.D.N.Y. July 28, 2016) (finding typicality because the "undisputed allegations here are that all putative class members were subject to the same policies"). Defendants in this case similarly have not denied that the front of house employees were subject to the same compensation practices regardless of job duty. Plaintiffs "assert . . . that defendants committed the same wrongful acts in the same manner against all members of the class," thus establishing typicality regardless of any "minor variations in the fact patterns underlying the individual claims." *Vivaldo*, 2015 WL 4922961, at *4. As such, Defendants' arguments[9] "do not undermine the conclusion that each putative class members' claims arise from the same course of events and each class member will make a similar legal argument to demonstrate liability." *Whitehorn v.*

---

[9] Defendants combine their arguments against commonality and typicality, arguing that the varying accounts given regarding the amount of overtime worked fails to satisfy the commonality and typicality requirements. *See* Defs.' Mem. L at 8.

*Wolfgang's Steakhouse, Inc.,* 275 F.R.D. 193, 200 (S.D.N.Y. 2011). Accordingly, the named representatives' claims are sufficiently typical of those of the proposed class as a whole.

### 5. Adequacy of Representation

The requirement that the representative parties must be able to fairly and adequately protect the interests of the class "is designed to ferret out potential conflicts between representatives and other class members." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001), *superseded by statute on other grounds as stated in Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 100 (S.D.N.Y. 2006). To determine whether a named plaintiff will be an adequate class representative, courts inquire whether: "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). However, "not every potential disagreement between a representative and the class members will stand in the way of a class suit." *Id.* Instead, the conflict must be "fundamental." *Id.*

Defendants argue that Balverde's interests are antagonistic to the proposed class because Balverde gave one set of facts in his Complaint as to his hours and overtime and two separate accounts of conflicting facts in his damages calculation and deposition. Defs.' Mem. L at 2–4. Defendants thus argue that it is "impossible for this Court to discern what exactly the injury is that was allegedly suffered by Balverde or which version of the facts should be relied upon, and as a result, there is no way that we can tell whether Balverde has the same interests or suffered the same injury as the proposed class members." *Id.* at 3.

None of these facts, however, create a conflict between Balverde and the rest of the Class. The inconsistencies as to hours worked discussed at length by Defendants at most "may

call [Plaintiffs'] credibility into question [but] they do not cast a shadow of doubt so severe as to disqualify him from serving as class representative." *Chime*, 137 F. Supp. 3d at 211. In light of the fact that Plaintiffs' alleged injuries are identical in kind to those of the Class, the Court finds that Plaintiffs' and the Class members' interests are aligned. *See Damassia,* 250 F.R.D. at 158 ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class.").

As to representation, Defendants' assertions of counsel's inadequacy are insufficient to defeat this factor. Pelton Graham LLC has an established record of competent and successful prosecution of wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area. Courts have regularly approved the appointment of Pelton Graham LCC to serve as class counsel. Pelton Declr. ¶ 9 (listing cases). The firm primarily practices within the area of wage and hour litigation—specifically within the food service industry—but also litigates other employment law matters. *Id.* ¶¶ 3–4. Furthermore, counsel has done a significant amount of work identifying and investigating the potential claims in this action, on behalf of both Balverde and the opt-in Plaintiffs, and is advancing the costs of the litigation. *Id.* ¶ 6. Thus, the Court is confident that counsel will be able to commit the resources necessary to fairly and adequately represent the Class. Accordingly, the Court finds the adequacy requirement satisfied.

### 6. Predominance

The predominance inquiry of Rule 23(b)(3) tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S.

591, 623 (1997)).  This analysis requires courts to "give careful scrutiny to the relation between common and individual questions in a case" and ask "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."  *Id.*  If "one or more of the central issues in the action are common to the class and can be said to predominate," the suit may be maintained as a class action under Rule 23(b)(3) "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."  *Id.*

As discussed above in regards to commonality, Plaintiffs have established that there are disputed issues that can be resolved through generalized proof.  The principal issue in this case is the legality of Defendants' various wage and hour practices.  *See id.* at 1048 (finding that "the experiences of a subset of employees can be probative as to the experiences of all of them" where "each employee worked in the same facility, did similar work, and was paid under the same policy").  The questions that are common to all Class members therefore predominate over those questions of damages individual to each employee.  *See, e.g.*, *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) ("The issues to be litigated are whether the class members (1) were supposed to be paid the minimum wage as a matter of law and were not, and (2) were supposed to be paid overtime for working more than forty hours a week and were not.  These are about the most perfect questions for class treatment.  Some factual variation among the circumstances of the various class members is inevitable and does not defeat the predominance requirement."); *Lassen v. Hoyt Livery Inc.*, No. 13 Civ. 01529 (JAM), 2014 WL 4638860, at *11 (D. Conn. Sept. 17, 2014) ("Predominance is often satisfied in wage and hour cases because liability is usually a common issue, and the only individualized questions involve damages calculations.").

Defendants' arguments as to the number of each class member's hours worked and resulting entitlement to damages must fail, as "the key issue regarding this class is whether Defendants had general policies to deny its employees spread of hours pay" and other legally-mandated wages. *Flores v. Anjost Corp.*, 284 F.R.D. 112, 130 (S.D.N.Y. 2012); *see also Alonso v. Uncle Jack's Steakhouse, Inc.*, No. 08 Civ. 7813 (DAB), 2011 WL 4389636, at *3 (S.D.N.Y. Sept. 21, 2011) ("While the extent, existence, and lawfulness of these company-wide policies are issues for the finder of fact at trial, they are issues that are subject to generalized proof. Those issues outweigh Defendants' concerns about Plaintiffs' varying job titles, locations, and work schedules."). Plaintiffs thus satisfy the predominance requirement.

### 7. Superiority

Rule 23(b)(3) requires that a class action be superior to other methods of adjudication. In making this determination, the Court may consider, among other things:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Defendants do not dispute the superiority requirement. As discussed above, Plaintiffs' NYLL claims arise out of the same nucleus of operative facts as their FLSA claims, which are going to be adjudicated in this Court in any event. *Jankowski v. Castaldi*, No. 01 Civ. 0164 (SJF) (KAM), 2006 WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006). Moreover, "there is reason to believe that class members may lack familiarity with the legal system, discouraging them from pursuing individual claims." *Id.* Accordingly, the Court finds that a class action is superior to other available methods for adjudicating this controversy.

### 8. Ascertainability

Although Rule 23 does not expressly require that a class be definite in order to be certified, "a requirement that there be an identifiable class has been implied by the courts." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 336 (S.D.N.Y. 2002). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Id.* at 337 (internal citations and quotation marks omitted). "Where any criterion is subjective, . . . the class is not ascertainable." *Id.* "In application, this means that it must be 'administratively feasible for a court to determine whether a particular individual is a member of the class [and t]he Court must be able to make this determination without having to answer numerous individualized fact-intensive questions.'" *Jankowski*, 2006 WL 118973, at *5 (quoting *Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 181 (S.D.N.Y. 2005)).

Defendants do not dispute that the class is sufficiently ascertainable. The Court thus finds that Plaintiffs have satisfied this implied requirement.

\* \* \*

As Plaintiffs have established compliance with Rule 23's requirements, their motion for class certification is GRANTED with respect to the front of house employees.

### C. Form and Content of the Proposed Notice

Here, Plaintiffs submitted a proposed notice, to which Defendants have not objected. *See* Pelton Decl., Ex. 11 (Doc. 62-11). Given that there is no objection to the content of the notice, and because the Court finds that the form and method of notice proposed by Plaintiffs conforms

with those regularly approved by courts in this Circuit, Plaintiffs proposed notice is approved,

provided it is modified to apply only to waiters, bussers, runners, and bartenders.[10]

## IV.    MOTION TO AMEND THE COMPLAINT

Plaintiffs also seek to amend the Complaint to add R. Russo, Defendant G. Russo's

daughter and co-owner of Lunella, as a Defendant.  Plaintiffs argue that discovery revealed not

only that R. Russo co-owns Lunella, but that she is also closely involved in the supervision,

scheduling, and payment of employees.  Doc. 58 at 2.  Defendants denied consent to amend, and

Plaintiff subsequently commenced motion practice by filing a pre-motion letter.  *See* Doc. 53.

On December 22, 2016, the Court granted Plaintiffs' request for leave to make this motion.

### A.  Legal Standard

Federal Rule of Civil Procedure 15(a) provides that the "court should freely give leave [to

amend] when justice so requires."  Fed. R. Civ. P. 15.  "Generally, a "district court has discretion

to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the

opposing party."  *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (quoting *McCarthy v.

Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).  Where a plaintiff seeks to join

parties to its civil suit, Federal Rule of Civil Procedure 21 "is the operative rule."  *Otegbade v.

N.Y. City Admin. for Children Servs.*, No. 12 CIV. 6298 (KPF), 2015 WL 851631, at *2

(S.D.N.Y. Feb. 27, 2015).  Rule 21 permits the addition of any parties by order of the court "at

any time, on just terms."  Fed. Civ. R. P. 21; *see also Momentum Luggage & Leisure Bags v.

Jansport. Inc.*, No. 00 Civ. 7909 (DLC), 2001 WL 58000, at *1–2 (S.D.N.Y. Jan. 23, 2001).

Because an answer has been filed here, the "showing necessary under Rule 21 is the same as that

---

[10] For the reasons outlined above, the Court denies class certification with respect to the back of house kitchen employees.

required under Rule 15(a)." *Int'l Media Films, Inc. v. Lucas Entm't, Inc.*, No. 07 Civ. 1178 (JGK) (FM), 2008 WL 781823, at *1 (S.D.N.Y. Mar. 20, 2008).

Where, as here, a scheduling order governs amendments to the complaint, the Second Circuit has held that the lenient standard under Rule 15(a) or Rule 21 must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause. *See Holmes*, 568 F.3d at 334; *Lawrence v. Starbucks Corp.*, No. 08 Civ. 3734 (JCF), 2009 WL 4794247, at *3 (S.D.N.Y. Dec. 10, 2009) (finding that plaintiffs showed good cause for their delay and proceeding to analyze the proposed amendment under Rules 15 and 21); *see also Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc*., 304 F.R.D. 170, 175 (S.D.N.Y. 2014) (listing cases noting the "obvious tension" between the standards of Rules 15(a) and 16(b)).

Generally, a "finding of 'good cause' depends on the diligence of the moving party." *Parker v. Columbia Pictures Indus*., 204 F.3d 326, 339–40 (2d Cir. 2000) (noting that "in certain cases the court may determine that the deadline cannot reasonably be met despite the diligence of the party seeking the extension") (internal quotation marks omitted); *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & New Jersey*, No. 15 Civ. 3526 (AJN), 2016 WL 6083956, at *3 (S.D.N.Y. Oct. 17, 2016) ("Specifically, the movant must show that the deadlines cannot be reasonably met despite its diligence.") (internal quotation marks omitted). "[T]he court may deny leave to amend where the party seeking it knew or should have known the facts sought to be added to the complaint." *Cummins, Inc. v. N.Y. Life Ins*., No. 10 Civ. 9252 (TPG), 2012 WL 3870308, at *3 (S.D.N.Y. Sept. 6, 2012). Where delayed discovery prevented a party from discovering facts sufficient to support a cause of action, a party must show that it acted diligently upon learning the new facts. *See e.g., Enzymotec Ltd. v. NBTY, Inc*., 754 F. Supp. 2d

527, 537 (E.D.N.Y. 2010) (noting that delayed discovery and settlement negotiations deferred plaintiff's ability to discover facts, and holding that plaintiff acted diligently by seeking leave to file an amended complaint only two months after acquiring information). While the diligence inquiry is the primary consideration, courts may also consider other relevant factors including whether the proposed amendment would result in prejudice to defendants. *See Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007); *see also Fresh Del Monte Produce, Inc.*, 304 F.R.D. at 175 (citing *Kassner*, 496 F.3d at 244). On a motion to amend, "the burden of demonstrating prejudice rests with the non-movant." *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 198 (S.D.N.Y. 2014).

### B. Analysis

Defendants do not argue either that the proposed amendment insufficiently pleads R. Russo's liability as an employer or that there is any reason why Plaintiffs' claims against R. Russo should be heard separately from claims against the current Defendants. Rather, Defendants argue that Plaintiffs have not shown good cause and have not acted diligently in seeking to amend because "R. Russo was well known to plaintiffs from the very beginning of this case, and yet they failed to name her as a defendant." Doc. 65 at 3–4. Defendants argue that Plaintiffs were employees at Lunnella, so they would have known of any alleged extensive involvement by R. Russo in the day to day operations of the restaurant, especially if R. Russo supervised employees as Plaintiffs aver. *Id.* at 4. Yet Defendants do not suggest how Plaintiffs, who worked as hourly employees, would have or should have had access to information regarding R. Russo's joint ownership of the restaurant or her role in calculating hours worked or processing payroll. Plaintiffs maintain that it was not until the deposition of Lunella accountant Stuart Kosoff that Plaintiffs learned of R. Russo's significant and ongoing involvement at

Lunella, particularly her role in calculating employee hours and processing payroll. Doc. 67 at 1–2.

The Court agrees with Plaintiffs. The basis for Plaintiffs' claim against R. Russo was Kosoff's deposition testimony, and Plaintiffs did not have sufficient evidence to state a claim against R. Russo until after his deposition. *See, e.g.*, *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08 CIV. 9116 (PGG), 2009 WL 1357946, at *6 (S.D.N.Y. May 12, 2009) (finding good cause to amend complaint to add defendant where, while Plaintiff "may have suspected" the role of the putative defendant in complaint-of events, "it lacked evidence" to name the putative defendant as a defendant until reviewing defendant's document production and a relevant deposition). Thus, the Court finds that Plaintiffs learned of the necessary facts for amending their Complaint during the course of discovery and filed their motion to amend the Complaint within a reasonable time after discovering these facts.[11]

Additionally, Defendants argue that they will be severely prejudiced because five Plaintiffs were deposed already, and Defendants did not ask them whether any of them complained to R. Russo about their alleged treatment, whether she performed any of the alleged acts in the Complaint, or whether she had any knowledge of Plaintiffs' work schedules, hours, or overtime or tip policies. Defs.' Mem. L. at 5.[12] Plaintiffs state that no additional discovery would be necessary, since all the parties—including R. Russo—have been deposed. Doc. 67 at 4–5. In light of Plaintiffs' representation that they "believe no additional discovery would be

---

[11] Plaintiffs aver that they learned the relevant information during the deposition of Kosoff, held on December 6, 2016 and that they sought consent from Defendants to amend the complaint the following day. Doc. 67 at 4. When Defendants declined to consent, Plaintiffs immediately filed a pre-motion letter on December 7, 2016 in anticipation of making this motion. Doc. 53.

[12] Defendants seek in the alternative that if the Court does grant Plaintiffs' motion that the Court order Plaintiffs to pay for all costs and Defendants' reasonable attorneys' fees for the re-opening of discovery. *Id.*

necessary," the Court finds that Defendants will not suffer undue prejudice if Plaintiffs are allowed to amend the Complaint to add R. Russo as a party.

## V.    CONCLUSION

For the foregoing reasons, the motion to amend the Complaint is GRANTED. Plaintiffs shall file their amended class and collective action complaint by **May 1, 2017.**

Plaintiffs' motion to certify the class is GRANTED in part and DENIED in part. It is hereby ordered that:

1) The Court certifies NYLL claims for unpaid minimum wages, overtime wages, unpaid spread-of-hours, and failure to provide wage notice, (Counts III, IV, V, VI) and for unlawfully withheld gratuities (Count VII) as a Rule 23(b)(3) class action on behalf of a class defined as: "all waiters, bussers, bartenders, and runners who worked for Lunella Ristorante, Inc. at any time from July 15, 2009 through the present."[13]

2) The Court appoints Named Plaintiff Jose Balverde as class representative and Pelton Graham LLC as class counsel.

3) The proposed class notice is approved, provided it is modified to apply only to waiters, bussers, runners, and bartenders. *See* Doc. 62-11.

4) Defendants are ORDERED by **May 12, 2017** to produce a list of the names, last-known email addresses, and last known mailing addresses of all waiters, bussers, bartenders, and runners employed at Lunella from July 15, 2009 to the present so that Plaintiffs can issue class notice.

5) The parties shall appear for a status conference on **May 26, 2017 at 2:00 P.M.**

The Clerk of the Court is respectfully directed to terminate the motions, Docs. 57, 60.

It is SO ORDERED.

Dated:    May 10, 2017
          New York, New York

_____
Edgardo Ramos, U.S.D.J.

---

[13] The Court notes that because it has not certified back of house kitchen employees, the proposed Unpaid Wage Class and Unpaid Tip Subclass are now defined with reference to the same group of employees.